NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**VL COLLECTIVE IP, LLC,**
*Appellant*

**v.**

**NETFLIX, INC.,**
*Appellee*

---

2025-1132

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2023-00630.

---

Decided: August 10, 2026

---

BRIAN C. BARAN, Reichman Jorgensen Lehman & Feldberg LLP, Washington, DC, argued for appellant. Also represented by SAVANNAH H. CARNES, NAVEED S. HASAN, CHRISTINE E. LEHMAN; JAIME F. CARDENAS-NAVIA, MICHAEL MATULEWICZ-CROWLEY, NATHANIEL GUSTAV WARNER, New York, NY.

ALIZA GEORGE CARRANO, Willkie Farr & Gallagher

LLP, Washington, DC, argued for appellee. Also represented by DANE SOWERS; DEVON WESLEY EDWARDS, MATTHEW S. FREIMUTH, New York, NY.

_____

Before TARANTO, SCHALL, and CHEN, *Circuit Judges*.

SCHALL, *Circuit Judge*.

VL Collective IP, LLC ("VideoLabs") appeals the October 2, 2024 final written decision of the Patent Trial and Appeal Board ("Board") determining that claims 1–24 of VideoLabs' U.S. Patent No. 7,440,559 ("the '559 patent") are unpatentable. *Netflix, Inc. v. VL Collective IP LLC*, No. IPR2023-00630, 2024 WL 4374920 (P.T.A.B. Oct. 2, 2024), J.A. 1–60. For the reasons set forth below, we *affirm*.

BACKGROUND

The '559 patent is generally directed to "controlling the flow of content" between a content provider ("server") and a user's device ("terminal"). '559 patent, col. 1 ll. 8–13, col. 2 l. 57–col. 3 l. 51. More specifically, the '559 patent describes the use of a "content flow manager" that controls the flow of multimedia content to a terminal based upon status information from the terminal, and, in some embodiments, further based upon status information from the server. *See id.* col. 11 ll. 6–17.

Claim 1 of the '559 patent, which is representative of the claims at issue, recites:

1. An apparatus comprising:

a processor configured to receive, from a terminal located remote from the apparatus, a content status including terminal status information, and configured to receive server status information regarding a source of content, wherein the server status information comprises a listing of at least one piece of content available from the source,

> *wherein the processor is configured to send, to the terminal, a response to the content status that instructs the terminal to perform one or more actions to thereby control the flow of content to the terminal based upon the terminal status information and the server status information*, and

> wherein the at least one piece of content available from the source, and the content for which the processor is configured to control the flow, comprise multimedia content.

*Id.* col. 15 ll. 15–31 (emphasis added).

Netflix, Inc. ("Netflix") filed a petition for inter partes review of claims 1–24 of the '559 patent. J.A. 2. The petition challenged claims on three grounds: first, that claims 1, 2, 4, 7, 8, 10, 13, 14, 16, 19, 20, and 22 are anticipated by U.S. Patent Application Publication No. 2003/0023427 ("Cassin"); second, that claims 1–24 are obvious in view of a combination of Cassin and U.S. Patent No. 7,243,136 ("Huston"); and third, that claims 1–24 are obvious in view of Huston alone. J.A. 6.

In the final written decision, the Board did not expressly construe any claim terms. J.A 8 (noting that the parties did not argue for the construction of any claim terms). The Board ultimately determined that Netflix had proven that each of the three grounds set forth in the petition rendered the claims unpatentable. J.A. 58. VideoLabs appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(A).

## DISCUSSION

### I

VideoLabs makes two arguments in its appeal, both of which pertain to claim 1's recitation of "wherein the processor is configured to send, to the terminal, a response to the content status that instructs the terminal to perform

one or more actions to thereby control the flow of content to the terminal based upon the terminal status information and the server status information."

First, VideoLabs argues that, although the Board did not expressly construe the term, the Board implicitly construed "instructs" as it appears in this limitation to mean "trigger, prompt, or leave to the recipient's discretion." Appellant's Br. 17, 23–33. In VideoLabs view, however, the plain meaning of the term is "order, command, direct, [or] tell." *Id.* at 17. According to VideoLabs, the Board's determinations of unpatentability based upon Cassin (grounds one and two) are in error because Cassin "[m]erely send[s] content that a client may accept or reject" and therefore Cassin does not teach "instruct[ing]" the flow of content under VideoLabs' construction of that term. *Id.* at 31–34.

Second, VideoLabs argues that the claimed "response to the content status" sent by the processor must be "triggered by" the terminal's sending of "content status" information. Appellant's Br. 19, 34–42. The Board's determination that Huston renders the claims obvious rests on error, VideoLabs asserts, because Huston's response is "triggered by" the availability of new content, not content status solely provided by a terminal. *Id.* at 41–42.[1]

---

[1]   Before the Board, the parties addressed this issue in connection with claim 3 of the '559 patent, which was challenged in the petition's second ground as obvious in view of the combination of Cassin and Huston. J.A. 47–52. In the final written decision, the Board incorporated its claim 3 analysis, which analyzed Huston, into its discussion of the petition's third ground (challenging claims 1–24 as obvious in view of Huston alone). J.A. 47–50, 54–57. We therefore address this argument in connection with representative claim 1.

We turn first to VideoLabs' second argument.

## II

"Claim construction is ultimately a question of law, decided de novo on review, as are the intrinsic-evidence aspects of a claim-construction analysis." *Intel Corp. v. Qualcomm Inc.*, 21 F.4th 801, 808 (Fed. Cir. 2021).

## A

In the final written decision, the Board determined that Huston teaches the claimed "response to the content status" because a skilled artisan would understand that Huston's differencing engine: receives a listing of content information (or "content status") from a traffic server (or "terminal"); uses that information to compare the versions of content stored on an origin server and the traffic server; and based on that comparison, directs the traffic server to delete content. J.A. 50. As noted above, according to VideoLabs, it is the availability of new content at Huston's origin servers that "triggers" a comparison and the actions that follow, not the differencing engine's receipt of content information from the traffic servers. Appellant's Br. 42.

In support of its argument that "response to the content status" must mean "triggered by" the content status provided by a terminal, VideoLabs asserts that the claims "consistently and repeatedly make clear" that the required "response" is "a message sent as part of a call-and-response protocol." *Id.* at 38 ("The terminal sends content status information to the content flow manager, which prompts the content flow manager to send 'a response' (answer, reply) 'to the content status' with instructions 'based upon' that information (and sometimes additional information)."). VideoLabs also asserts that "a response to the content status" must have a different meaning than the phrase "based upon the terminal status information" so as "to give meaning to all the words in the claims." *Id.* That is, VideoLabs

contends that the "based upon" phrase "speaks to the content of the response," whereas "response" "speaks to the process." *Id.* at 38–39.

VideoLabs next points to the '559 patent specification, which it asserts "teaches a protocol in which the terminal provides a 'content status' that 'includes terminal status information,' and then the content flow manager 'send[s] a response' with instructions to control the flow of content." *Id.* at 39–40 (citing '559 patent col. 11 l. 54–col. 14 l. 23, Fig. 6). VideoLabs also relies upon dictionary definitions for "response" and "respond" that it asserts support its construction. *Id.* at 39.

B

To the extent that the Board implicitly construed "response to the content status" not to require that it mean "triggered by" the terminal's sending of content status, we find no error in such a construction. To begin, we do not read the claims to require that the terminal's sending of a "content status" (or, for that matter, the processor's receipt of a content status) be the prompt or trigger that directly causes the claimed "response." For one thing, certain claims, including claim 1, require that the processor receive "server status information" in addition to "content status including terminal status information" and require that the processor send the "response" to the terminal "based upon" *both* the "terminal status information" *and* the "server status information." '559 patent, col. 15 ll. 16–27 (claim 1); *see also id.* col. 1. ll. 47–53 (claim 4), col. 16 ll. 30–35 (claim 10), col. 17 ll. 11–16 (claim 16), col. 18 ll. 16–22 (claim 22). This cuts against an understanding of "response to the content status" that requires that the "content status" is necessarily the "trigger" that leads to the sending of a "response" by the processor.

We also do not read the recitation of the "based upon" phrase in the claims to require that the "response" be "triggered" by the content status provided by the terminal in

order for "response" not to be rendered meaningless. Even if, as VideoLabs argues, "based upon" speaks to the content of the communication, and "response" refers to the process, nothing in the claims necessitates that "response" means more than merely a communication sent *after* the terminal sends content status.

The specification of the '559 patent likewise does not support limiting "response" to mean "triggered by" the content status provided by the terminal. The specification makes clear that the content flow manager can receive content status from a terminal "periodically" and can make a determination and respond to the terminal "*[a]fter* the content flow manager 53 has been provided with the terminal status information and the server status information." '559 patent col. 12 ll. 4–17, 60–64; *see also id.* col. 13 ll. 37–46 (noting that a "response" can be sent after determining "if [the server] includes one or more pieces of content for the terminal to download"). That the response occurs "after" the content status provided by the terminal is received does not mean that the content status necessarily "triggers" the response. This understanding is consistent with the dictionary definitions VideoLab provides, which do not themselves require that a "response" be "prompt[ed]" or "triggered by" another action. *See* Appellant's Br. 39 (citing *Response*, Merriam-Webster's Online Dictionary, https://www.merriam-webster.com/dictionary/response, *Respond*, Merriam-Webster's Online Dictionary https://www.merriam-webster.com/dictionary/respond).

VideoLabs' argument that Huston does not render claims 1–24 obvious depends on its unsuccessful claim construction argument. We therefore affirm the Board's determination that a preponderance of the evidence establishes that claims 1–24 of the '559 patent are unpatentable in view of Huston.

### C

Having affirmed the Board's determination that Huston renders claims 1–24 of the '559 patent unpatentable, we need not reach VideoLabs' first argument on appeal: that the Board implicitly construed "instructs" in connection with its determinations that Cassin renders the claims unpatentable. Oral arg. at 8:52–9:32, https://www.cafc.uscourts.gov/oral-arguments/25-1132_05 052026.mp3 (counsel for VideoLabs acknowledging that if our court were to affirm the Board's unpatentability determination with respect to Huston we need not address the Board's unpatentability determinations with respect to Cassin).

### CONCLUSION

We have considered VideoLabs' remaining arguments but find them unpersuasive. For the foregoing reasons, we *affirm* the Board's decision.

### AFFIRMED